# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-6830-GW(PJWx) | Date | January 16, 2014 |
|---|---|---|---|
| Title | *Leah Manzari v. Associated Newspapers, Ltd., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Pat Cuneo | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Steven L. Weinberg | Katherine M. Bolger |
| | Louis P. Petrich |

**PROCEEDINGS:**   **DEFENDANT'S MOTION TO DISMISS COMPLAINT [17];**

**DEFENDANT'S MOTION TO STRIKE COMPLAINT [20]**

The Court's Tentative Ruling is circulated and attached hereto.  Court hears oral argument.  For reasons stated on the record, Defendants' motions are TAKEN UNDER SUBMISSION.  Court to issue its ruling.

|  | : | 15 |
|---|---|---|
| Initials of Preparer | JG | |

***Leah Manzari p/k/a/ Danni Ashe v. Associated Newspapers Ltd., et al.***; Case No. 13-CV-6830-GW(PJWx); Tentative Ruling on: (1) Defendant's Motion to Strike Pursuant to Cal. Civ. Proc. Code § 425.16, and (2) Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

## I. **Background**

Leah Manzari, professionally known as Danni Ashe ("Plaintiff" or "Ashe"), is the founder and former CEO of Danni's Hard Drive, an adult entertainment website launched in 1995 with the domain name "Danni.com." Compl., Docket No. 1, ¶ 7. Plaintiff also worked as a soft-core porn actress, performing regularly on the Danni.com website, which she originally designed and programmed herself "within two weeks of reading The HTML Manual of Style[.]" *Id.*; *see also* Bolger Decl., Docket No. 21, Ex. G.

Plaintiff's website achieved significant success. By 2001, Danni.com generated a profit of $6.5 million. Compl. ¶ 7. By 2003, Plaintiff maintained 50 full-time employees, a 16,000 square foot studio in Los Angeles, and an archive containing hundreds of thousands of hours of videos. *Id.* ¶ 8. At its peak, Danni.com attracted more visitors than the websites of Martha Stewart, Britney Spears, and Oprah Winfrey. Bolger Decl. ¶ 10, Ex. O. Plaintiff also claims that she is considered the "most downloaded woman on the internet," and articles about her have been written in the *Wall Street Journal*, *The New York Post*, *USA Today*, *Wired*, and on *ABCNews.com*, among other media outlets. Compl. ¶ 9; *see also, e.g.,* Bolger Decl. Exs. J, P, X, FF. Ashe has testified before Congress,[1] and she has been interviewed by PBS, NPR, VHI, and Howard Stern. Bolger Decl. Exs. HH, JJ, LL, QQ, RR. In 2004, Plaintiff sold Danni.com, and she no longer works in the adult entertainment industry. Compl. ¶ 10.

On August 22, 2013, the Daily Mail Online ("Mail Online") – which is published by Defendant Associated Newspapers Ltd. ("ANL" or "Defendant") – ran an article with the headline, "Porn industry shuts down with immediate effect after 'female performer' tests positive for HIV." Compl. ¶ 24, Ex. A. ("the Article"). The headline appeared in large, bold text. *Id.* Following the first several lines of the body of the story, the Article displayed a large photographic image of Plaintiff posing on a bed in lingerie in front of a camera. *Id.* In the photo, Plaintiff's professional name "Danni" can be seen in a bright neon light above and behind Plaintiff, who is positioned provocatively. *Id.* ¶ 27. A caption underneath the photo read, "Moratorium: The porn industry in California was shocked on Wednesday by the announcement that a performer had tested HIV positive." *Id.* ¶ 26; Ex. A. The second paragraph of the body of the Article reported that the performer "was not immediately identified" and "officials didn't say when the positive test was recorded." *Id.* Ex. A. The Article also reported that the actor was believed to be "female and new to the industry," but did not use the words "hard-core" or "soft-core" to distinguish among types of pornography. *See* Nye Decl., Docket No. 22, Ex. A.

Plaintiff avers that she has never tested positive for the HIV virus and has never had the HIV virus. Compl. ¶ 3. She also maintains that she has never performed in hard-core pornography. *Id.*

---

[1] Plaintiff testified before the congressional Child Online Protection Act ("COPA") commission in 2000 regarding the protection of minors from inappropriate content online. Manzari Decl., Docket No. 28-1, ¶ 11.

¶ 39.[2] After the Article was uploaded to the Mail Online website on August 22, 2013, the story was republished by Google, syndicated worldwide, and spread across the globe via the internet within minutes. *Id.* ¶¶ 29-30. Plaintiff filed the instant lawsuit against Defendant on September 17, 2013 asserting claims for (1) libel and (2) false light. *See generally id.* Plaintiff alleges that the Article defames her by implying that she is HIV positive, is unchaste, and is performing in "hard-core" pornographic films. *See, e.g., id.* ¶¶ 43, 50.

The Article was written by Mail Online Staff Writer James Nye ("Nye"). Nye Decl. ¶¶ 3-4. At the time he wrote the Article, Nye "did not know the identity of the actor in question, nor did [he] learn the name of the actor in [his] reporting." *Id.* ¶ 4. His draft was based on a story published by the Associated Press regarding the porn industry shutdown, as well as research from the "public record," including stories published by the *Los Angeles Daily News* and *X-Biz*, an adult industry trade magazine, which indicated that the unnamed actor in question was a woman. *Id.* ¶ 3. In preparing the Article, Nye asked the Mail Online photo desk to provide him "with some pictures representative of the pornographic film industry that would be safe to publish on [Defendant's] website (*i.e.* contained no nudity)[.]" *Id.* ¶ 5.

Assistant photo editor Jack Forbes ("Forbes") searched the archives of Corbis Images, a photo licensing agency, for relevant photographs. Forbes Decl., Docket No. 23, ¶ 4. Forbes uploaded several "stock photo images" to the Mail Online's photo file server, one of which was the photograph depicting Plaintiff. *Id.* ¶¶ 3-4. Nye ultimately selected Plaintiff's photograph "because it clearly conveyed the concept of the pornographic film industry, showing a camera near a woman on a bed in lingerie" and Nye "considered it to be a good, non-obscene photograph to illustrate the Article." *Id.* ¶ 7. Neither Forbes nor Nye believed that Plaintiff was the actress who allegedly tested positive for HIV as described in the Article, and they purportedly did not intend to convey this meaning. Nye Decl. ¶¶ 8-9; Forbes Decl. ¶¶ 6-7.

On November 14, 2013, Defendant filed the present Special Motion to Strike under Cal. Civ. Proc. Code § 425.16 and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6). *See generally* Docket Nos. 17, 20. Defendant argues that Plaintiff's claims arise from Defendant's protected exercise of free speech, and that Plaintiff cannot prevail on her inadequately-pled defamation or false light causes of action. *Id.*

## II. Legal Standards

### *1. Motion to Strike Pursuant to Cal. Code Civ. Proc. § 425.16*

A Strategic Lawsuit Against Public Participation ("SLAPP") is a meritless suit that seeks to use "costly, time-consuming litigation" to chill an individual's constitutionally protected right to free speech. *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). California's anti-SLAPP statute is designed to prevent "cause[s] of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech." Cal. Civ. Proc. Code § 425.16(b)(1). The California legislature passed an anti-SLAPP statute to give defendants a means of dismissing such suits early in the litigation process and thereby counteract their chilling effect.

---

[2] The Complaint fails to define "hard core" pornography or to delineate the essential differences between it and the "soft core" variety.

*See* Cal. Civ. Proc. Code § 425(b)(1). Federal courts enforce California's anti-SLAPP law when sitting in diversity. *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013), *en banc reh'g denied*, ___ F.3d ___, 2013 WL 6183821 (Nov. 27, 2013).

"To prevail on an anti-SLAPP motion, the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Makaeff*, 715 F.3d at 261; *see also Zamani v. Carnes*, 491 F.3d 990, 994 (9th Cir. 2007); *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). "The burden then shifts to the plaintiff . . . to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Makaeff*, 715 F.3d at 261; *see also Equilon Enters.*, 29 Cal. 4th at 67.

To satisfy its burden at the first step, a defendant demonstrates "that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)[.]" *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002) (quotation marks omitted). To fall within the potentially protective sphere of California's anti-SLAPP statute, the conduct in question must have been "an act in furtherance of . . . free speech . . . in connection with a public issue," and include:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e). "The statute is to be 'construed broadly.'" *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (quoting Cal. Code Civ. Proc. § 425.16(a)). "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's activity that gives rise to his or her asserted liability – and whether that activity constitutes protected speech or petitioning." *Navellier v. Sletten*, 29 Cal. 4th 82, 92 (2002). But the anti-SLAPP statute is targeted at causes of action, not "particular allegations within a cause of action." *See A.F. Brown Elec. Contractor, Inc. v. Rhino Elec. Supply, Inc.*, 137 Cal. App. 4th 1118, 1124 (2006). The critical question is whether the causes of action themselves were based on an act or acts in furtherance of the right of petition or free speech. *See Mindys Cosmetics*, 611 F.3d at 597; *City of Cotati*, 29 Cal. 4th at 78. A cause of action alleging both protected and unprotected activity will be subject to section 425.16 unless the protected conduct is "'merely incidental' to the unprotected conduct." *Scott v. Metabolife Int'l, Inc.*, 115 Cal. App. 4th 404, 414, 419 (2004); *see also Thomas v. Quintero*, 126 Cal. App. 4th 635, 653 (2005) ("A cause of action is subject to a motion to strike under the anti-SLAPP statute even if it is based only in part on allegations regarding protected activity."); *Martinez v. Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181, 187-88 (2003) ("[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the

anti-SLAPP statute applies, and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute.").

If the analysis passes the initial hurdle posed by a defendant's invocation of the anti-SLAPP statute, the court must then determine whether the plaintiff has established a reasonable probability that it will prevail on its claims. *See Makaeff*, 715 F.3d at 261; *see also Equilon Enters.*, 29 Cal. 4th at 67. Under the "reasonable probability" of prevailing standard applicable to the second step in California's anti-SLAPP analysis, "the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, 'no reasonable jury could find for the plaintiff.'" *Makaeff*, 715 F.3d at 261 (quoting *Wornick*, 264 F.3d at 840).

### 2. *Motion to Dismiss Pursuant to Rule 12(b)(6)*

Plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim upon which relief can be granted for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). A motion to dismiss should be granted if the complaint does not proffer enough facts to state a claim for relief that is plausible on its face. *See Twombly*, 550 U.S. at 558-59; *see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

In deciding a 12(b)(6) motion, the court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and other extrinsic documents when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The court must construe the complaint in the light most favorable to the plaintiff and must accept all factual allegations as true. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court must also accept as true all reasonable inferences to be drawn from the material allegations in the complaint. *See Barker v. Riverside County Office of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Conclusory statements, unlike proper factual allegations, are not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 681; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## III. Analysis

In its moving papers, Defendant argues that the allegedly defamatory statements were not "of

-4-

and concerning" Plaintiff because the Article itself states that the infected performer was not immediately identified, and that the actress was reportedly "*new to the industry*[.]" Docket No. 20 at 25 (emphasis added). Because Plaintiff's identity is clear from the photo – and because Plaintiff is "anything but new to the industry" – Defendant asserts that any reasonable reader would thus not believe Plaintiff to "be the still-unknown HIV-positive performer."[3] *Id.* Defendant further argues that because Plaintiff is a public figure, she cannot demonstrate the requisite "malice" needed to prevail on her claims. *Id.* at 22-23, 26-29. Defendant argues that there are no facts to support Plaintiff's claim that "Defendant knew the use of Plaintiff's image juxtaposed with the Article" would convey that Plaintiff was HIV positive, unchaste, and performs in hard-core pornography. *Id.* at 30. Moreover, because Nye and Forbes both "swear they knew of no falsity whatsoever in the article and that they did not knowingly say anything false about the Plaintiff," Defendant maintains that there is no evidence indicating that ANL "'in fact entertained serious doubts about whether plaintiff had HIV, was unchaste, or acted in hard- core pornography[.]'" *Id.* at 31 (internal marks omitted).

"Defamation constitutes an injury to reputation; the injury may occur by means of libel or slander." *Shivley v. Bozanich*, 31 Cal. 4th 1230, 1242 (2003) (citing Cal. Civ. Code § 44). Generally, "a written communication that is false, that is not protected by any privilege, and that exposes a person to contempt or ridicule or certain other reputational injuries, constitutes libel." *Id.* (citing Cal. Civ. Code § 45; Restatement (Second) of Torts § 568, subd. (1) (1979)). "False light, like defamation, requires at least an implicit false statement of objective fact." *Flowers v. Carville*, 310 F.3d 1118, 1132 (9th Cir. 2002) (citing *Solano v. Playgirl*, 292 F.3d 1078, 1082, 1084 (9th Cir. 2002)). "False light is a species of invasion of privacy, based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where the defendant knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Price v. Operating Engineers Local Union No. 3*, 195 Cal. App. 4th 962, 970 (2011) (citing Restatement (Second) of Torts § 652E (1979)).

"In defamation actions . . . the statement on which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way." *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1042 (1986). "[W]hether statements can be reasonably interpreted as referring to plaintiffs is a question of law for the court." *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008) (citing *Alszeh v. HBO*, 67 Cal. App. 4th 1456, 1461 (1998)). "If there is no express reference to the plaintiff in a defamatory statement, the claim will fail unless the statement refers to the plaintiff by reasonable implication." *Id.* (citing *Blatty*, 42 Cal. 3d at 1046). When a "defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or otherwise creates a defamatory implication, he may be held responsible for the defamatory implication, even though the particular facts are correct." *Price v. Stossel*, 620 F.3d 992, 1003 (9th Cir. 2010) (quoting *Weller v. Am. Broad. Co.*, 232 Cal. App. 3d 991, 1004 n.10 (1991)).[4] "Defamation can arise from the

---

[3] It is unclear as to the basis of Defendant's contention that a "reasonable reader" of the Article would necessarily recognize the Plaintiff as a "porn actress" or otherwise be aware as to the length of time she had been in the pornography industry.

[4] For an implied defamation claim, the published statement must reasonably "be understood as implying the

publication of the plaintiff's photograph in conjunction with a defamatory statement, even in the absence of any express textual connection between the statement and the photograph." 50 Am. Jur. 2d Libel and Slander § 131 (2013); *see also Church of Scientology of California v. Flynn,* 744 F.2d 694, 697 (9th Cir. 1984) ("Under California law, '[t]here is no requirement that the person defamed be mentioned by name . . . . It is sufficient if from the evidence the jury can infer that the defamatory statement applies to the plaintiff . . . [or] if the publication points to the plaintiff by description or circumstances tending to identify him.'") (alterations in original) (quoting *Di Giorgio Fruit Corp. v. AFL-CIO,* 215 Cal. App. 2d 560, 569 (1963)); *see also Yow v. Nat'l Enquirer, Inc.,* 550 F. Supp. 2d 1179, 1183-84 (E.D. Cal. 2008) ("If the Court finds the statements are 'of and concerning' Plaintiff, then the Court undertakes the analysis whether the statements are capable of conveying defamatory meaning and it is for the jury to determine if it was so understood.") (citing *Court v. San Juan Unified School Dist.,* 33 Cal. App. 4th 1491, 1500 (1995)). "What a newspaper article actually says or carries to its readers must be judged by the publication as a whole. *The headlines alone may be enough to make libelous per se an otherwise innocuous article.*" *Kaelin v. Globe Commc'ns Corp.,* 162 F.3d 1036, 1041 (9th Cir. 1998) (emphasis in original) (citation omitted) (discussing Michigan law with approval in analyzing defamation claim under California law).

In addition, "public figures must prove by clear and convincing evidence that an allegedly defamatory statement was made with knowledge of falsity or reckless disregard for truth[.]" *Ampex Corp. v. Cargle,* 128 Cal. App. 4th 1569, 1577 (2005) (citing *New York Times Co. v. Sullivan,* 376 U.S. 254, 279-80 (1964)). "[W]hether a plaintiff in a defamation action is a public figure is a question of law for the trial court." *Harkonen v. Fleming,* 880 F. Supp. 2d 1071, 180 (N.D. Cal. 2012) (alteration in original) (quoting *Khawar v. Globe Int'l Inc.,* 19 Cal. 4th 254, 264 (1998)).[5] "To show actual malice, plaintiffs must demonstrate [defendant] either knew his statement was false or subjectively entertained serious doubt his statement was truthful." *Christian Research Inst. v. Alnor,* 148 Cal. App. 4th 71, 84-85 (2007) (citing *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 511 (1984)). "The question is not 'whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.* (quoting *Reader's Digest,* 37 Cal. 3d at 256-57). "Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." *Id.* (citation omitted)

A defamation plaintiff "may rely on inferences drawn from circumstantial evidence to show actual malice." *Alnor,* 148 Cal. App. 4th at 84. (citation omitted). "A failure to investigate, anger and hostility toward the plaintiff, reliance upon sources known to be unreliable, or known to be biased against the plaintiff – such factors may, in an appropriate case, indicate that the publisher

---

allegedly defamatory content." *Stossel,* 620 F.3d at 992 (citing *Weller,* 232 Cal. App. 3d at 1001 n.8). "This threshold requirement, derived from the common law, is independent of any constitutional requirements that would otherwise protect speech." *Id.*

[5] An "all-purpose public figure is one who has achieved such pervasive fame or notoriety that he or she becomes a public figure for all purposes and contexts." *Ampex,* 128 Cal. App. 4th at 1527. "The limited purpose public figure is an individual who voluntarily injects him or herself or is drawn into a specific public controversy, thereby becoming a public figure on a limited range of issues." *Id.* (citing *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351 (1974); *Reader's Digest Assn. v. Superior Court,* 37 Cal. 3d 244, 253 (1984)).

himself had serious doubts regarding the truth of his publication." *Reader's Digest*, 37 Cal. 3d at 258 (internal alterations omitted). Thus, an inference of malice may be drawn "when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation ... [or] where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Alnor*, 148 Cal. App. 4th at 84-85 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)).

Here, the Court would find that, even if Ashe is deemed an all purpose or limited public figure, she has demonstrated a reasonable probability of prevailing on her defamation and false light claims.[6] Initially, the Court would reject Defendant's contention that the Article is not "of and concerning" Plaintiff because the Article was not actually written about her. *See, e.g.,* Docket No. 17 at 13-18. While Defendant is correct that the substantive reporting in the Article relates to the porn industry shutdown and the positive HIV test result, there is little doubt that – given the prominence of Plaintiff's photo and the overarching headline – the Article's titular mention of an HIV-positive performer could reasonably be interpreted as referring to Plaintiff. *See Kaelin*, 162 F.3d at 1040 ("[T]he publication is to be measured, not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the *natural and probable effect upon the mind of the average reader*.") (emphasis added) (citation omitted). The bold headline is written in significantly larger font than the text in the remainder of the Article, and states unambiguously that a "female performer" and "tests positive for HIV[.]" Compl, Ex. A. Moreover, the caption underneath Plaintiff's photograph – which, again, actually displays Plaintiff's stage name "Danni" in neon light – states that "[t]he porn industry in California was shocked on Wednesday by the announcement that a performer had tested HIV positive[.]" *Id.* Though written in smaller font than the Article's headline, the caption under the photo, too, seems to appear in bold text. *Id.*

As is clear from the authority discussed above, under California law, there is no requirement

---

[6] Accordingly, the Court need not consider Plaintiff's contentions that the Article does not discuss an issue of public interest or that Defendant did not act in furtherance of the public interest in writing the Article. Docket No. 29 at 15-18. Because Plaintiff's defamation and false light claims are based on the same facts, the Court addresses them together in its analysis. *See Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1389 n.13 (1999) ("When a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or fails on whether it meets the same requirements as the defamation cause of action[.]"); *but see Fleming v. City of Oceanside*, No. 10CV1090-LAB BLM, 2010 U.S. Dist. LEXIS 132179, at *9-10 (S.D. Cal. Dec. 14, 2010) (noting that while "publication" element of false light claim requires "publicity in the sense of communication to the *public in general*," defamation is sufficient "when the publication is only to *one person* other than the person defamed.") (emphasis added). Here, the Court would find that Plaintiff has demonstrated a reasonable probability of success on both claims, even accounting for a difference in the "publication" element required for each. In addition, the Court notes that, in its Reply to the Anti-SLAPP motion, Defendant argues for the first time that the false light claim must be stricken because it is duplicative of the defamation claim. The Court declines to consider this argument. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (affirming district court's decision to reject points raised for the first time in reply); *M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623, 636-37 (2001) ("We agree with [defendant] that these [additional invasion of privacy claims] are probably cumulative and pleading them as separate torts may add nothing to plaintiffs' claims for invasion of privacy. But a SLAPP motion is not the proper procedural vehicle to address these individual causes of action . . . it cannot be said that [plaintiffs'] lawsuit is meritless and 'brought primarily to chill the valid exercise of the constitutional rights of freedom of speech[.]'") (citations omitted).

that the person defamed be mentioned specifically by name in a publication;[7] rather, it is sufficient if a jury can infer that the defamatory statement applies to Plaintiff or that the publication points to Plaintiff by description or circumstances tending to identify her. *See, e.g., Flynn,* 744 F.2d at 697. Thus, under the circumstances here, the Court would find that, even though the *body* of the Article states that the performer was "not immediately identified" and indicates that the "performer with the HIV-positive test is female and new to the industry," the juxtaposition of Plaintiff's photo with the large, bold headline at the top of the Article – as well as the bold language in the photo caption – could reasonably imply the defamatory meaning that Plaintiff (the only actress depicted in the Article) tested positive for HIV and was the cause of the porn industry shutdown. *Stossel,* 620 F.3d at 1003; *Kaelin,* 162 F.3d at 1040-41 (finding it "clear" under California law that headlines are not "liability-free" zones and holding that "plaintiff ha[d] come forward with clear and convincing evidence to get to a jury on the issue of whether the headlines are susceptible of a false and defamatory meaning."). Where a publication is reasonably susceptible of a defamatory meaning, a factual question for the jury exists. *Kaelin,* 162 F.3d at 1040.[8]

The Court would also find that Plaintiff has set forth sufficient facts to demonstrate that Defendant published the photo with reckless disregard for truth. Indeed, Defendant's own declarations appear to establish as much. James Nye – the Article's author – admitted that "[a]t no time" did he believe that "the woman in the Photograph was the actor who allegedly tested positive for the HIV as described in the Article." Nye Decl. ¶ 8. Jack Forbes – the Mail Online photo editor – similarly admitted that he did "not believe that the Article was about the woman in the photograph" but instead considered the photo to be a "general visual representation of the pornographic film industry." Forbes Decl. ¶ 6. In other words, at the time they selected her photo, both Nye and Forbes "subjectively entertained serious doubt" that Plaintiff was the performer who tested positive for HIV. *Alnor,* 148 Cal. App. 4th at 84-85. Given that the actor's identity was unclear at the time the Article was published, there were also, of course, "obvious reasons to doubt" that Danni Ashe was the actress who actually tested positive for HIV. *Id.* While both Nye and Forbes affirm that they did not *intend* to imply that Plaintiff tested positive for HIV (and the Article itself states that the performer "was not immediately identified"), such intentions and small-print qualifications do not negate a conclusion that the Article was published with reckless disregard as to an implied truth: namely, that Plaintiff was the HIV-positive performer who shut down the porn industry. As explained above, a defamation plaintiff "may rely on inferences drawn from circumstantial evidence to show actual malice[.]" *Reader's Digest,* 37 Cal. 3d at 258.[9] In this case, a jury could reasonably

---

[7] Although arguably this publication *did* in some sense refer to Plaintiff by "name," given the fact that her stage name appears in a neon light behind her in the photograph. Compl. Ex. A.

[8] The Court also notes that, since this publication appeared on the internet, the extent to which a defamatory meaning may have been exacerbated could have varied depending on the device or software through which the Article was viewed. The Article may have appeared in different formatting depending on whether it was viewed in Apple's Safari browser, for example, or in Google Chrome. Similarly, the Article may have appeared differently when viewed on a smartphone or desktop computer.

[9] As stated in *Solano,* 292 F.3d at 1087:

It is neither surprising nor fatal to Solano's case that there is conflicting, circumstantial

credit inferences drawn from the circumstantial evidence in the record to conclude that Defendant acted with reckless disregard for truth in publishing the Article.[10]

## IV. Conclusion

In sum, the Court would find that Plaintiff has demonstrated a reasonable probability of prevailing on the gravamen of her claims, and Defendant's anti-SLAPP motion would therefore be DENIED. The Court would likewise DENY Defendant's motion to dismiss Plaintiff's allegations in the Complaint insofar as they relate to the alleged implication that she tested positive for HIV.

However, given that the parties' briefing focused almost entirely on the Article's discussion of the performer's HIV test results, the Court would not yet be convinced that *all* of Plaintiff's defamation allegations survive Defendant's motion to dismiss under Rule 12(b)(6). For instance, the Court would probably agree with Defendant that Plaintiff has not stated a claim for defamation based on the implication that she was "unchaste" or appears in "hard-core" pornographic films. *See, e.g.,* Docket No. 17 at 14 n.3. The Article does not use the terms "hard-core" or "soft-core" in reference to pornography and never discusses the nature of the sexual conduct in which the unnamed performer engaged. *Id.*; Compl. Ex. A. Moreover, the parties do not meaningfully dispute that Plaintiff engaged in at least *some* kind of pornography, and it is unclear how Plaintiff would be defamed by a publication implying that she worked in the industry generally – particularly given that Plaintiff's work is still available and downloaded every day. *See, e.g.,* Bolger Decl., Exs. C, D, E, F.

In any event, whether or not Plaintiff's work should be deemed "hard-core" or "soft-core" – and any arguably defamatory implication created by the Article related to *those* definitions or her general involvement in the porn industry– is plainly not the focus of this lawsuit. Thus, before ruling on Defendant's motion to dismiss those specific portions of Plaintiff's Complaint, the Court would instruct the parties to meet-and-confer after evaluating the instant Tentative Order. If necessary, given the limited attention devoted to these allegations in the present moving papers, the Court would consider permitting perhaps 10 pages of additional briefing from both sides addressing the sufficiency of those allegations, as currently pled in the Complaint. The Court will discuss this matter with the parties further at the hearing.

---

evidence that Playgirl entertained serious doubt whether the magazine cover would create the false impression that Solano appeared nude inside the magazine. "As we have yet to see a defendant who admits to entertaining serious subjective doubt about the authenticity of an article it published, we must be guided by circumstantial evidence. By examining the editors' actions we try to understand their motives." *Eastwood,* 123 F.3d at 1253. *See Kaelin,* 162 F.3d at 1042 ("The editors' statements of their subjective intention are matters of credibility for a jury.") . . . .

[10] Additionally, as Plaintiff points out, the data shown on Corbis' image database – from which Defendant selected the photo – listed Plaintiff's name and described her as posing "in one of her studios in Los Angeles in 2000." Docket No. 29 at 12. Nothing from the Corbis database suggested that Plaintiff was the performer mentioned in the Article's headline or discussed underneath the photo caption, much less that she was *actively* performing in adult entertainment in August of 2013.