UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-6830-GW(PJWx) | Date | February 3, 2014 |
|---|---|---|---|
| Title | *Leah Manzari v. Associated Newspapers, Ltd., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Javier Gonzalez | None Present | | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | | |
| None Present | None Present | | |

**PROCEEDINGS:  (IN CHAMBERS): COURT ORDER RE:**

**DEFENDANT'S MOTION TO DISMISS COMPLAINT [17];**

**DEFENDANT'S MOTION TO STRIKE COMPLAINT [20]**

On January 16, 2014, this Court issued a Tentative Ruling denying Defendant's Special Motion to Strike Pursuant to Cal. Civ. Proc. Code § 425.16. *See generally* Docket No. 36. At the January 16 hearing, Defendant insisted that, under *Dodds v. American Broadcasting Co.*, 145 F.3d 1053 (9th Cir. 1998) and *Newton v. Nat'l Broadcasting Co., Inc.*, 930 F.2d 662 (1990), Plaintiff cannot establish the requisite "actual malice" necessary to prevail on her defamation claim because, as Defendant contends, neither Daily Mail Online ("Mail Online") staff writer James Nye ("Nye") or assistant photo editor Jack Forbes ("Forbes") subjectively intended to convey the defamatory implication that Plaintiff tested positive for HIV.[1] Both Nye and Forbes submitted declarations affirming that they did not intend to imply that Plaintiff is HIV positive; that they do not believe the Mail Online article conveys that impression; and that they never believed Plaintiff was HIV positive. *See generally* Nye Decl., Docket No. 22; Forbes Decl., Docket No. 23. Thus, in Defendant's view, the Court's Tentative Ruling improperly allows "liability to be imposed not only for

---

[1] As previously delineated by the Court, Plaintiff is entitled to prevail on the "actual malice" element of her defamation claim if Defendant *knowingly* made a false statement that hurt her reputation or if Defendant had "obvious reasons to doubt the veracity of its reporting, but engaged in purposeful avoidance of the truth." *Eastwood v. Nat'l Enquirer*, 123 F.3d 1249, 1251 (9th Cir. 1997) (internal marks and citations omitted). Mere negligence is not enough. *Id. See also Harte-Hanks Commcn's v. Connaughton*, 491 U.S. 657, 666-67 (1989) ("[A]lthough the concept of 'reckless disregard' 'cannot be fully encompassed in one infallible definition,' we have made clear that the defendant must have made [the decision to publish] with a 'high degree of awareness of . . . probable falsity,' or must have 'entertained serious doubts as to the truth of his publication.'")

:

Initials of Preparer    JG

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-6830-GW(PJWx) | Date | February 3, 2014 |
|---|---|---|---|
| Title | *Leah Manzari v. Associated Newspapers, Ltd., et al.* | | |

what was said but also for what was *not* intended to be said." *Newton*, 930 F.2d at 681 (emphasis added).

    Having once again reviewed *Newton, Dodds*, and their progeny, the Court would not alter its previous holdings, and would DENY Defendant's Special Motion to Strike.² In *Newton*, the Ninth Circuit concluded that a publication could not be held liable on the ground that it "should have foreseen" that its words would be interpreted in a defamatory manner. 930 F.2d at 680. But this Court's prior Tentative Order did not merely hold that Defendant "should have foreseen" the defamatory interpretation at issue here. Instead, the Court held that – based on the evidence in the record – a jury could reasonably conclude that Defendant *did* actually foresee that interpretation. Docket No. 36 at 9-10; *Eastwood*, 123 F.3d at 1256 n.20. "The fact that we can't look inside the editors' minds doesn't stop us from reaching conclusions about their thoughts; subjective standards are nearly always satisfied by circumstantial proof (as in most criminal prosecutions)." *Eastwood*, 123 F.3d at 1256 n.20. Here, having considered the totality of the choices and admissions made by the Mail Online's staff, the Court would find that a jury could reasonably conclude that those who created the Article intended to convey the impression – known by them to be false – that Plaintiff tested positive for HIV. *Id.* at 1256; Docket No. 36 at 9.

    *Dodds* is also distinguishable from this case. In *Dodds*, a California state court judge ("Judge Dodds") brought a defamation suit against ABC for falsely implying that he used a crystal ball to make judicial decisions. 145 F.3d at 1056-57, 1063-64. But, in that case, Judge Dodds' "strongest argument" that ABC *intended* to convey the defamatory implication was evidence that "during the production process, ABC had slated [Judge Dodds] in a category entitled, 'how judges decide.'" *Dodds*, 145 F.3d at 1064. The "how judges decide" category was proposed before ABC began conducting interviews about Judge Dodds, however, and ABC ultimately decided not to use any such category in the finished program. *Id.* The Ninth Circuit concluded that no reasonable juror "could find that ABC's initial contemplation of a plan that it subsequently abandoned supports a conclusion that it *intended* to make the defamatory implication in the show that it actually produced. There is, in short, simply no evidence that the producers intended in the actual broadcast to convey to viewers the impression that Judge Dodds used the crystal ball to make his decisions." *Id.* (emphasis added).

    Unlike *Dodds* or *Newton*, the circumstantial evidence of Defendant's subjective knowledge of falsity and/or intentional recklessness in this case is much stronger. Initially, Defendant never possessed any evidence (*e.g.* statements from a source) to suggest that Plaintiff was the person who tested positive for HIV,

---

    ²At a general level, the Court initially notes that the allegedly defamatory reporting at issue in both *Newton* and *Dodds* was based on much more extensive investigative journalism than the reporting at issue in this case. In both *Newton* and *Dodds*, the media outlets responsible for the purportedly defamatory reporting had conducted a variety of interviews with multiple sources, some of whom largely confirmed what was ultimately reported or gave somewhat ambiguous or conflicting accounts of the events at issue. Here, by contrast, the Article published by the Mail Online was based primarily on *other* news stories about an HIV positive performer, none of which remotely suggested that the performer in question was or could possibly have been Plaintiff, whose photo was essentially selected from a database at random.

| | : |
|---|---|
| Initials of Preparer | JG |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-6830-GW(PJWx) | Date | February 3, 2014 |
|---|---|---|---|
| Title | *Leah Manzari v. Associated Newspapers, Ltd., et al.* | | |

and both Nye and Forbes admit in their declarations that they never believed she had HIV. Nye Decl. ¶¶ 8-9; Forbes Decl. ¶¶ 6-7. Moreover, unlike the comparatively in-depth TV segment in *Dodds* – much of which was based on interviews with sources who affirmatively told ABC that Judge Dodds used a crystal ball in connection with his role as a judicial officer – here Defendant published a short online piece without having any clue who Plaintiff was,[3] but admittedly *knowing* that the person who tested positive for HIV had *not* been identified. Defendant selected Plaintiff's photo from a Corbis image database describing Plaintiff as posing in "one of her studios in Los Angeles in 2000" and – despite Nye and Forbes' subjective belief that Plaintiff was *not* the performer who recently tested positive for HIV in 2013 – Defendant nevertheless intentionally chose to feature Plaintiff prominently on the first page underneath the headline "Porn industry shuts down with immediate effect after 'female performer' tests positive for HIV." Compl. ¶ 24, Ex. A.[4]

---

[3]Defendant suggests both that (1) Plaintiff is so well known that she *is* an all-purpose public figure for the purposes of defamation; and that (2) neither Nye or Forbes knew who Plaintiff was and thus could not have intended to convey that she was HIV positive. *Compare, e.g.,* Docket No. 20 at 22-24 *with* Nye Decl. ¶ 8. Setting aside whether Defendant actually *knew* who Plaintiff was, the declarations in the record demonstrate that no one on Defendant's staff believed that Plaintiff was HIV positive, nor did Defendant have any information to suggest that Plaintiff was HIV positive. Indeed, despite reports that the actress had not yet been identified, no one at the Mail Online bothered to investigate Plaintiff's identity, period. As stated above, Plaintiff may prevail if Defendant had obvious reasons to doubt the veracity of its reporting, but engaged in purposeful avoidance of the truth. *St. Amant v. Thompson*, 390 U.S. 727, 730 (1968); *Eastwood*, 123 F.3d at 1251; *Harte-Hanks*, 491 U.S. at 692; *cf. United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976) (en banc) (willful blindness tantamount to knowledge).

[4]Thus, given the date on the Corbis image database, Defendant also arguably had obvious reasons to doubt that Plaintiff was even actively performing in the adult film industry as of 2013. *See also Kaelin v. Globe Commica-*

:

Initials of Preparer   JG

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-6830-GW(PJWx) | Date | February 3, 2014 |
|---|---|---|---|
| Title | *Leah Manzari v. Associated Newspapers, Ltd., et al.* | | |

Furthermore, the Mail Online decided to caption the photo, "Moratorium: The porn industry in California was shocked on Wednesday by the announcement that a performer had tested HIV positive." *Id.* Where, as here, "the communication, by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference, the communication will be deemed capable of bearing that meaning." *White v. Fraternal Order of Police*, 902 F.2d 512, 520 (D.C. Cir. 1990) (cited with approval in Ninth Circuit's discussion of actual intent requirement in *Dodds*, 145 F.3d at 1064).[5]

Finally, it is worth reiterating that this Court's conclusions are based on the standards applicable to an anti-SLAPP motion to strike pursuant to Cal. Code Civ. Proc. §425.16. Docket No. 36 at 4-5. Under the "reasonable probability" of prevailing standard applicable to the second step in California's anti-SLAPP analysis, "the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, 'no reasonable jury could find for the plaintiff.'" *Id.* Based on the record at this stage, the Court cannot conclude that Plaintiff lacks a sufficient legal basis for her claims or that no reasonable jury could find for Plaintiff. Defendant's anti-SLAPP motion to strike would therefore be DENIED.

However, as discussed in the Court's prior Tentative Ruling, the parties are instructed to meet and confer regarding Plaintiff's allegations that she was somehow defamed by a "hard-core" implication created by the Article. *See* Docket No. 36 at 10. The Court would remain open to dismissing those specific allegations pursuant to Rule 12(b)(6) but, as previously noted, the briefing on this particular issue was somewhat limited. *Id.* A status conference to discuss those allegations would be set for Thursday, February 13, 2014 at 8:30 a.m. (unless the parties are able to reach a resolution regarding that aspect of the Complaint).

---

*tions*, 162 F.3d at 1042 (9th Cir. 1998) ("The editors' statements of their subjective intention are matters of credibility for a jury.").

[5]As previously explained in its Tentative Order, the Court looks to the totality of Defendant's presentation (not just the small print) of the Article in concluding that a reasonable juror could find that Defendant's editors falsely suggested to an ordinary reader of Mail Online – as well as those who "merely glance at the headlines" while surfing the web – that Plaintiff had tested positive for HIV and was responsible for the porn industry shutdown. *Eastwood*, 122 F.3d at 1256.

:

Initials of Preparer    JG